JAMES M. BULLARD and WILLIAM P. FARRAR, adminis-
trators, etc., of ABEL FARRAR, deceased, plaintiffs in error,
vs. MARY FARRAR, REBECCA FARRAR, LUCY ANN FAR-
RAR, ABEL FARRAR and WILLIAM FARRAR, defendants
in error.

F. made the following will, to-wit: "That all my estate be kept to-
gether during the widowhood of my beloved wife, Martha, and minori-
ty of my children; in case the widow should marry and the children
as they become of age, or the day they are married, shall draw one-
sixth of the estate as appraised, except twenty-five per cent. of each
share, which shall remain undistributed until the youngest child shall
become of age, at which time an equal and entire division of the whole
estate shall take place. It is also my will that the children shall be
raised and well educated from the proceeds of my estate:" *Held*,
That a bill filed by the administrators asking leave to sell the land and
re-invest the proceeds in other lands or negro property, or some other
safe investment, should be entertained: *Provided*, the necessities of
the estate require such change, and that it is neither in violation of the
terms of the will nor the intention of the testator to do so.

Bill in Equity, in Putnam Superior Court, and decision by
Judge IVERSON L. HARRIS, at September Term, 1863.

Abel Farrar executed a will in due form of law, and ap-
pointed his wife, Martha Farrar, executrix, and W. W. Oneal
executor, thereof. After the testator's death, the will was set
up, and letters testamentary issued to the executrix and exe-
cutor named. The will was very short, and simply directed
that the estate of the testator should be kept together during
the widowhood of his wife, and the minority of his children,
to-wit: Rebecca, Mary, Lucy Ann, William and Abel. The
will also provided that in case the widow should marry, and the
children as they should become of age, or marry, they should
each draw one-sixth of the estate as appraised, except twenty-
five per cent. of each share, which was to remain undistribu-
ted until the youngest child attained majority, at which time
the whole estate should be equally divided. The will further
directed that the children should be raised and well educated
from the proceeds of the estate, which consisted of a tract of
land badly worn and unproductive, stock and necessary outfit

for a farm, and a number of negroes, of which eight were working hands.

Some time after the testator died, the widow married and drew three-fourths of one-sixth of the estate, which reduced the means of supporting and educating the children to that extent. Afterwards, the widow and her husband both died and left the family without a head, and the management of the estate was left to administrators with the will annexed, to-wit: James M. Bullard and William P. Farrar.

In process of time, it became a demonstrated fact that the proceeds of the estate, in its then form, was insufficient to support and educate the children as the testator desired and designed; whereupon the administrators filed a bill invoking a construction of the will, and direction as to its execution in the emergency stated, and under the circumstances detailed. The bill prayed, that the land might be sold, and the proceeds invested in more productive land, upon which the slaves could be profitably employed, or that the land be sold and its proceeds be invested in some other safe form, and that the slaves be hired out, to the end that the testator's wishes as to his children might be effectuated, or that the Court should give such other direction to the case as the facts and circumstances would justify and demand.

Upon the case presented, the presiding Judge charged the jury, that the prayer of the bill, if granted, would violate the intentions of the will, and would, in effect, be making a will for the testator.

The jury decreed accordingly, and error is assigned upon the charge and the decree.

WINGFIELD, for plaintiffs in error.

———, for defendants in error.

*By the Court.*—LUMPKIN, C. J., delivering the opinion.

What is this will? That the *estate* be kept together for the maintenance and well education of the children of the testator —not that the negroes be kept on the land whereon the testator lived and died. He never mentions either land or negroes,

but directs that his estate be kept together, whatever form it might assume.    That is, that it be not subdivided amongst his legatees at his death, and thus obviously to effectuate the paramount purpose of the testator, namely: raising and educating his children.    Well, it turns out in the course of time, that the estate kept together as the testator left it, under the best management, will no longer support the family—only twenty acres of the land fit for cultivation—and that, in the language of one of the witnesses, not always to be "counted on."

What is to be done?    What course can be pursued but the one adopted by the administrators in this case?    Go into a Court of Equity, and ask the direction of the Chancellor to advise the parties, and if the proof shows the necessity of intervention, direct the jury to decree that the land be sold and the proceeds be re-invested in better land, or in some other fund, and the negroes be hired out, for the purpose of carrying out the paramount purposes of the testator.    And, should it be absolutely necessary, take a part of the corpus of the proceeds to maintain and educate the children.    For this is a literal compliance with the language of the will: "It is also my will that the children shall be raised and well educated" —not from the annual income, profits, or products of his estate, but "from the proceeds of the estate."

We see no serious difficulty in this case.

Let the judgment be reversed.